FRANK M. BRADEN and MARGARET A. BRADEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Braden v. Commissioner
Docket No. 2651-72.
United States Tax Court
T.C. Memo 1973-210; 1973 Tax Ct. Memo LEXIS 77; 32 T.C.M. (CCH) 979; T.C.M. (RIA) 73210; September 20, 1973 Filed Frank M. Braden, pro se. J. Edward Friedland, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1969 in the amount of $2,148.03. The only issue is whether petitioners are entitled to a business bad debt deduction for 1969 under section 166(a) [1] in lieu of a nonbusiness bad debt deduction allowed by respondent under section 166(d). 2 FINDINGS *79 OF FACT Frank M. Braden (hereinafter referred to as petitioner) and Margaret A. Braden were legal residents of Youngstown, Ohio, at the time they filed their petition. They filed their joint Federal income tax return for 1969 with the district director of internal revenue, Cleveland, Ohio. In 1960 petitioner invested $2,640 in the stock of Policy-Matic Corp. of America, a corporation headquartered in Atlanta, Georgia. That corporation was engaged in selling land travel insurance through vending machines. It issued franchises to other organizations covering specified territories throughout the United States. On October 19, 1960, petitioner and five other individuals obtained a franchise from Policy-Matic Corp. of America and organized a corporation, Policy-Matic Corp. of Ohio, Inc. (hereinafter Policy-Matic), under the laws of the State of Ohio, to engage in the sale of land travel insurance through vending machines within a franchised territory. Petitioner, president and principal shareholder of Policy-Matic, made the following investments in the stock of that corporation: 3 Date
Amount 10/19/60
$2,000.00
6/24/61
1,000.00
10/17/61
3,000.00
2/26/62
3,000.00
Total
$9,000.00
*80 During 1960, 1961, and 1962, Policy-Matic's business was unsuccessful, and petitioner made various advances, on an open account, to Policy-Matic in the aggregate amount of $30,000. These advances were made whenever needed by Policy-Matic in order to meet its current operating expenses. In addition, on July 12, 1963, petitioner paid $1,850 to a law firm, Roth & Roth, on behalf of Policy-Matic, for legal services. On the same date, petitioner paid $1,500 to an accounting firm, Fuller & Welker, on behalf of Policy-Matic, for accounting services. These fees were incurred in connection with efforts to obtain the approval of Federal and State regulatory agencies for the public issuance of Policy-Matic's stock. On March 21, 1965, petitioner paid $2,000 to Peoples Bank of Youngstown in discharge of his obligation as guarantor of a loan in the amount of $10,000 to Policy-Matic. 4 In January of 1965, Policy-Matic Corp. of America ceased operations. On February 1, 1965, Policy-Matic transferred to petitioner 428 vending machines and all its office equipment in partial payment of the advances totaling $30,000 which he had made during 1960, 1961, and 1962. On the same date, Policy-Matic *81 gave petitioner a note in the amount of $21,440 representing the balance due on the advances. The transfer of the vending machines to petitioner on February 1, 1965, left Policy-Matic with no assets other than a checking account with a balance of approximately $20. On February 20, 1965, the State of Ohio canceled the Articles of Incorporation of Policy-Matic because it had not paid the State franchise tax. The Articles of Incorporation were never reinstated. On March 4, 1965, the shareholders of Policy-Matic adopted a resolution terminating its business operations. During all periods herein material, petitioner was a college professor at Youngstown University. He taught industrial marketing, purchasing, and advertising. In 1961 petitioner inherited some money from his mother. From time to time during the 1960-1966 period, he invested funds in connection with various business ventures, in addition to his dealings with Policy-Matic and 5 Policy-Matic Corp. of America. These other ventures included a partnership, known as Kuppanmatic Instant Beverage Service, formed by petitioner and an inventor to promote the sale of beverages through vending machines. He also acquired *82 an exclusive distributorship of a vending machine for the sale of a diabetes test and a temporary interest in a cigarette vending machine venture in Alabama. In their original income tax returns for 1965, 1966, and 1967, petitioners claimed no bad debt or worthless stock loss deductions in respect of their dealing with Policy-Matic. However, on April 16, 1969, petitioners filed amended income tax returns (Form 1040X) for those 3 years. In the amended return for 1965, petitioners showed two worthless debts in the respective amounts of $5,350 [2] and $21,440 - deducted as short-term capital losses - and worthless stocks of Policy-Matic and Policy-Matic Corp. of America in the respective amounts of $9,000 and $2,640 - deducted as long-term capital losses. For these capital losses totaling $38,430, petitioners deducted $1,000 in 6 their amended return for 1965. In the amended returns for 1966 and 1967, petitioners deducted $1,000 each year, claiming capital loss carryovers from the 1965 amended income tax return. *83 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue. ↩
2. This $5,350 item is evidently composed of the following: Payment to Roth & Roth (1963)
$1,850
Payment to Fuller & Welker (1963)
1,500
Payment to Peoples Bank of Youngstown (1965)
2,000
Petitioners' 1968 income tax return is not in evidence. Petitioners' income tax return for 1969 contains the following schedule: Payment to Fuller and Welker accountants to try to form a corporation
$1,500.00
Roth and Roth Attorneys to form a new corporation
1,850.00
Payment on note undersigned note that was not paid by corporation Peoples Bank
2,000.00
Personal loan of money to Policy-Matic Corporation of Ohio $21,440.
4,000.00
Deducted $1,000. 1965; deducted $1,000. 1966, deducted $1,000. 1967, using 1040X amended U.S. individual income tax form.
Policy Matic Corporation of Ohio 3,000 shares of stock valued at $9,000. deducted $1,000.
1,000.00
Policy Matic Corporation of America 880 shares $2,640.00 no deduction
$10,350.00
This total amount ($10,350) of these items was deducted on the face of the return. 7 In the notice of deficiency, respondent determined that the $10,350 was a nonbusiness bad debt subject to the short-term capital loss limitation of $1,000. Accordingly, petitioners' taxable income was increased by $9,350. OPINION Although section 166(a) provides a deduction for the full amount of any debt which becomes worthless during the taxable year, section 166(d) renders that provision inapplicable to nonbusiness bad debts. Section 166(d) (2) defines the term "nonbusiness debt" to mean a debt other than (A) "a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer," or (B) "a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." Under section 166(d) (1) (B), a loss attributable to any nonbusiness debt which "becomes worthless within the taxable year" is accorded the same treatment as a loss on the sale or exchange of a capital asset held for not more than 6 months. Insofar as pertinent in this case, such a loss may be offset against capital gains and the balance may be deducted to the extent of $1,000 (sec. 1211(b)). Any unused portion of the loss may be carried over and deducted in subsequent 8 years subject to prescribed limitations (sec. 1212(b)). Petitioners do not dispute the correctness of respondent's treatment of the loss on the Policy-Matic stock but claim a deduction against their 1969 ordinary income for the full amount of the bad debt losses listed in the schedule attached to their return for that year. We do not think petitioners have shown they are entitled to a deduction in 1969 in excess of the amount allowed. First, a deduction is allowable only for a debt which becomes worthless during the taxable year, and the Policy-Matic debt did not become worthless during 1969. That debt lost its value in 1965. As shown in our Findings, Policy-Matic, the debtor, was stripped in 1965 of all its assets, and its Articles of Incorporation were canceled for nonpayment of the State franchise tax. At the end of 1965, there was no reasonable prospect that Policy-Matic would be able to repay the debt. Therefore, even if the Policy-Matic debt was a business debt falling under section 166(a), the full amount of the loss from its worthlessness was deductible in 1965. To the extent petitioner's business operating loss, including the debt, exceeded his taxable income in that year, it would be subject to carryback 3 years and carryover 5 years. Sec. 172(b). The record does not contain the 1962, 1963, 9 1964 or 1968 returns or any evidence as to the amount of petitioners' taxable income in those years. The 1965, 1966, and 1967 returns are in the record, and they show that petitioners' reported taxable income in those years substantially exceeded the disputed $10,350 loss. Therefore, petitioners have not shown that any loss, even if the debt should be regarded as a business debt, was subject to carryover to 1969.
Second, we think respondent is clearly correct in his determination that the Policy-Matic debt was nonbusiness in character. Indeed, in his amended income tax returns for 1965 through 1967, petitioner so treated his debt claims totaling $26,790 against Policy-Matic. In his 1969 return, for the first time insofar as the record shows, he claimed business bad debt deductions for his debt claims against Policy-Matic, though continuing to claim a capital loss deduction for his investments in Policy-Matic's stock. Under section 166, the character of a bad debt - whether it is a business bad debt or a nonbusiness bad debt - is determined by the relationship it bears to the taxpayer's trade or business. Only if it bears a proximate relationship to the taxpayer's trade or business will it qualify as a business bad debt under section 166(a). . 10 Although petitioner acknowledges that he was employed as a full-time college professor, he claims he had sufficient free time to engage in promoting various enterprises as a business and that the loss was incurred in that business. However, the vague, general testimony in this respect, reflected in our Findings, does not bear out petitioner's contention that he was engaged in promoting business enterprises. The evidence does not show any of the details of the enterprises or ventures alleged to have been promoted, e.g., what promotional work petitioner did, how much time he devoted to such work, precisely what he did, how he became involved in the businesses, etc. Nor does the evidence show that petitioner's activities differed from those of any other investor. He does not claim that he promoted the businesses for a fee or commission or for a profit on their sale. At most, he has shown only that he invested his money in several ventures, and according to , that is not enough to show an independent business of promoting business enterprises. Petitioners have not shown that they are entitled to the disputed business bad debt deduction for 1969. Decision will be entered for the respondent. ↩